UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCHAGHTICOKE TRIBAL NATION, : | |
|     Petitioner, : | |
| : | |
| v. : | Case No: 3:06cv81 (PCD) |
| : | |
| GALE NORTON, SECRETARY, : | |
| DEPARTMENT OF THE INTERIOR, : | |
| et al., : | |
|     Respondents, : | |
| : | |
| STATE OF CONNECTICUT, KENT : | |
| SCHOOL CORPORATION, THE : | |
| CONNECTICUT LIGHT & POWER : | |
| COMPANY, and TOWN OF KENT, : | |
|     Intervenors-Respondents. : | |

## RULING ON PENDING MOTIONS

This action involves a petition for review brought by Petitioner, Schaghticoke Tribal Nation ("STN"), under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA"). Currently pending are Intervenors-Respondents' Motion to Strike and STN's Motion for Leave to Take Discovery, Motion for Clarification of the Record and Motion for Supplemental Discovery. For the reasons stated herein, Intervenors-Respondents' Motion to Strike [Doc. No. 48] is **denied**, STN's Motion for Leave to Take Discovery [Doc. No. 58] is **granted in part** and **denied in part**, and STN's Motion for Clarification of the Record and for Supplemental Discovery [Doc. Nos. 87, 88] is **granted in part** and **denied in part**.

I.    BACKGROUND

STN and several of its members filed a land claim action in April 1975, seeking to restore certain aboriginal and reservation lands located in the Town of Kent, Connecticut, under the Nonintercourse Act, 25 U.S.C. § 177 (the "1975 land claim action"). In December 1985, the

United States National Parks Service, a bureau within the United States Department of the Interior, initiated an action seeking to take possession of approximately 43.47 acres of land located in the Town of Kent, Connecticut.[1]  Several defendants who might have an interest in the land were named, including STN by virtue of the 1975 land claim action.  In defending this action, it became necessary for STN to establish its existence as a tribe so that it could invoke the protections of 25 U.S.C. § 177, which prohibits alienation of tribal land.  Accordingly, on December 7, 1994, STN submitted its petition for federal recognition to the Bureau of Indian Affairs ("BIA").[2]

On September 11, 2000, this Court assumed control over the recognition process and STN's petition, noting that although the BIA's "technical expertise makes it better positioned to make a recognition determination, such expertise is outweighed by its now demonstrated inability to make such determinations in anything remotely resembling a timely manner." (See Ruling on Pending Motions, Doc. No. 158, 3:85cv1078 (PCD).)  On May 9, 2001, the Court entered a scheduling order providing, *inter alia*, that "[n]o non-federal party or amici shall communicate or meet with any officials in the immediate offices of the Secretary of the Interior, the Assistant Secretary-Indian Affairs or the Deputy Commissioner of Indian Affairs with respect to this petition, without notification to the other parties." (See Stip. Order, Doc. No. 170,

---

[1] That action, 2:85cv1078 (PCD), together with two other land claim actions subsequently filed by STN, 3:98cv1113 (PCD) and 3:00cv820 (PCD), have been consolidated and are currently pending before this Court.  The actions have been stayed pending resolution of the STN's recognition process.

[2] The BIA and the Office of Federal Acknowledgment ("OFA") are charged with guiding Indian tribes through the recognition process.  Pursuant to 25 C.F.R. §§ 83.10(b), (c)(1) and (j)(1), Indian tribes may seek technical assistance from the BIA and the OFA at various points during the recognition process.

3:85cv1078 (PCD).)

On December 5, 2002, after a number of proceedings in this Court and before the federal agencies and following review of the STN petition, the Office of Federal Acknowledgment ("OFA") issued a Proposed Finding against tribal acknowledgment, finding that STN had failed to satisfy the two key criteria set forth in 25 C.F.R. §§ 83.7(b)[3] and (c).[4] STN and all interested parties then participated in the comment process, as provided for in 25 C.F.R. § 83.10(i). On January 29, 2004, the Principal Deputy Assistant Secretary of Indian Affairs, Aurene Michele Martin, notified STN and all interested parties of the Final Determination, acknowledging the existence of STN as a tribe. See 69 Fed. Reg. 5570 (Feb. 5, 2004).

On May 3, 2004, the State of Connecticut, together with the Kent School Corporation, Connecticut Light & Power Company, the Town of Kent and other interested parties, filed Requests for Reconsideration of the Final Determination with the Interior Board of Indian Appeals ("IBIA"), pursuant to 25 C.F.R. § 83.11. On November 29, 2004, STN submitted its response to the IBIA opposing the Requests for Reconsideration. Just three days later, on December 2, 2004, the OFA filed a "Supplemental Transmittal" memorandum with the IBIA calling into question its own Final Determination. On May 12, 2005, the IBIA issued its decision to vacate and remand the Final Determination.

On May 20, 2005, in the related land claim litigation, this Court granted STN's Motion for Permission to Conduct Limited Discovery and set an October 1, 2005 deadline for the

---

[3] 25 C.F.R. § 83.7(b) requires that "[a] predominant portion of the petitioning group comprises a distinct community and has existed as a community from historical times until the present."

[4] 25 C.F.R. § 83.7(c) requires that the tribe have "maintained political influence or authority over its members as an autonomous entity from historical times until the present."

completion of that discovery. (See Ruling on Mot. Discovery, Doc. No. 249, 3:85cv1078 (PCD).)[5] STN issued its first notices of deposition of July 1, 2005, and issued a second set on September 13, 2005. On September 30, 2005, one day before the close of discovery, this Court issued an order precluding STN from conducting certain discovery and denying STN's request for additional time for discovery on the ground that "[a]mple time for inquiry as to ex parte communications with the DOI has been provided." (See Order re: Pending Motions 4, Doc. No. 286, Sept. 30, 2005, 3:85cv1078 (PCD).) The Court observed, however, that STN could challenge the fairness of the BIA proceedings in an appeal of the decision under the APA. (See id.)

On October 12, 2005, the OFA announced its Reconsidered Final Determination denying STN's petition. The decision was published in the Federal Register on October 14, 2005. See 70 Fed. Reg. 60,101 (Oct. 14, 2005).[6] STN filed a Petition for Review of the Reconsidered Final Determination on January 12, 2006, and it is now before this Court on that administrative appeal.

In their Petition for Review, STN argues that the actions leading up to the Reconsidered Final Determination "violate the APA because they are arbitrary and capricious, constitute an abuse of discretion, are contrary to the laws and regulations governing the Department of the Interior and the OFA with respect to the federal acknowledgment process, violated STN's rights to procedural due process, breached the United States' federal trust obligation to STN as an

---

[5] The Court permitted STN and Respondents to conduct limited discovery "for the purpose of determining whether the Court's Scheduling Order prohibition on meeting or contacting officials of the Department of the Interior has been violated." (Ruling on Mot. Discovery 1, Doc. No. 249, 3:85cv1078 (PCD).)

[6] In its Reconsidered Final Determination, the OFA found that STN failed to meet: (1) the "community" requirement set forth in 25 C.F.R. § 83.7(b) and (2) the political authority or influence criterion set forth in § 83.7(c).

4

Indian tribe, and are the produce of unlawful political influence and congressional interference." (Pet. Rev. 25-26.)

## II.    MOTION TO STRIKE

The State of Connecticut, the Kent School Corporation, and Connecticut Light & Power Company ("Intervenors-Respondents") move to strike from the record the declaration of Aurene Michele Martin[7] ("Martin Declaration").[8]  In moving to strike, Intervenors-Respondents assert that the Martin Declaration "is a thinly-veiled attempt to get around the fundamental rule that the Court's review of an agency decision is limited to the administrative record and that evidence of the decision maker's thought process, other than that which is present in the record itself, may not be relied on." (Mot. Strike 1.)

The Supreme Court has limited district courts' review of administrative agency decisions to the record before the agency, except in very limited circumstances, Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44, 105 S. Ct. 1598; 84 L. Ed. 2d 643 (1985),[9] and has made clear that "[i]t is not the function of the court to probe the mental processes of the [agency decision maker]," United States v. Morgan, 313 U.S. 409 (1941).  A very limited exception to this "record

---

[7]   Ms. Martin served as Acting Assistant Secretary of Indian Affairs for the Department of the Interior ("DOI") from January 2003 through February 2004, during that time that STN's Petition for Federal Acknowledgment was being evaluated by the Office of Federal Acknowledgment ("OFA") of the Bureau of Indian Affairs ("BIA"). (Martin Decl. ¶¶ 3-4.)

[8]   The Martin Declaration was originally submitted in support of STN's Motion for Enlargement of Time [Doc. No. 36], which has since been withdrawn. (See Order, Doc. No. 62, Aug. 15, 2006.) STN also relied on the Martin Declaration in its Motion for Leave to Take Discovery [Doc. No. 58] and therefore, this issue was not mooted by the withdrawal of the Motion for Enlargement of Time.

[9]   In Florida Power & Light, the Supreme Court held that "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U. S. C. § 706, to the agency decision based on the record the agency presents to the reviewing court." 470 U.S. at 743-44 (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)).

rule" exists, and an extra-record investigation may be appropriate, where "there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decision makers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." National Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 28 L. Ed. 2d 136, 91 S. Ct. 814 (1971)).

Without the requisite "strong showing," STN will not be permitted to submit extra-record evidence in support of their Petition for Review. The Martin Declaration is appropriate to consider, however, for the very limited purpose of determining whether STN has met their burden to justify further discovery. See Sokaogon Chippewa Community v. Babbitt, 961 F. Supp. 1276, 1285 (W.D. Wis. 1997) (considering extrinsic evidence for the limited purpose of determining whether the plaintiffs met their evidentiary burden to justify extra-record discovery). In order to fully consider the discovery question, and without necessarily crediting any of the factual assertions set forth in the declaration, the Court will not strike the Martin Declaration from the record. The Martin Declaration will be considered only for determining whether STN is entitled to extra-record discovery; it will not be considered in relation to the Petition for Review unless and until STN makes the "strong showing" of bad faith or improper behavior required for its consideration. Accordingly, the Motion to Strike is denied.

## III.    MOTION FOR LEAVE TO TAKE DISCOVERY

STN moves for an order permitting limited discovery on the question of whether improper political pressure influenced the Federal Respondents' decision to deny STN's petition for federal acknowledgment. Federal Respondents and Intervenors-Respondents both submitted

briefs in opposition to STN's motion.

   A.   **Standard of Review**

As stated above, the general rule on a petition for review is that courts confine their review of an administrative agency's decision to the administrative record. Citizens to Preserve Overton Park, 401 U.S. at 419-20 (1971).  There is, however, a limited exception to this general rule where "there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decision makers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." National Audubon Soc'y, 132 F.3d at 14 (citing Citizens to Preserve Overton Park, 401 U.S. at 420).

The requisite "strong showing" imposes a significant burden on the party moving for discovery, and as such, "[b]ald assertions of bad faith are insufficient to require agency officials to submit to depositions." Friends of the Shawangunks, Inc. v. Watt, 97 F.R.D. 663, 667 (N.D.N.Y. 1983).  There is a presumption of validity in administrative action, Udall v. Washington, Virginia and Maryland Coach Co., 130 U.S. App. D.C. 171, 398 F.2d 765 (D.C. Cir. 1968), and thus, "a party seeking to depose an administrative official must show *specific facts* to indicate that the challenged action was reached because of improper motives." Id. at 668 (emphasis added); see also Havasupai Tribe v. Robertson, 943 F.2d 32, 34 (9th Cir. 1991) (finding that extra-record discovery was not appropriate based only on the petitioner's "speculative" claim, lacking any supporting evidence, that the agency wrongfully considered documents outside of the record in reaching its decision); City of Mt. Clemens v. EPA, 917 F.2d 908, 918 (6th Cir. 1990) (holding that the petitioner's "unsubstantiated allegation" that the

agency acted in bad faith, when viewed in light of the detailed reasoning and careful procedures set forth in the record, was insufficient to warrant an exception to the general record rule); China Trade Center, L.L.C. v. Washington Metro. Area Transit Auth., 34 F. Supp. 2d 67, 70-71 (D.D.C. 1999) ("government officials are presumed to act in good faith . . . . Plaintiff must present 'well-nigh irrefragable proof' of bad faith or bias on the part of government officials in order to overcome this presumption") (internal citations omitted).  Although the party moving for extra-record discovery must come forward with significant evidence of wrongdoing, it is improper to "require [the moving party] to come forward with conclusive evidence of political improprieties at a point when they are seeking to discover the extent of those improprieties." Sokaogon Chippewa Community, 961 F. Supp. at 1281 (noting that "agency officials are not likely to keep a written record of improper political contacts; the only way to uncover such contacts is by examining relevant phone records and by asking these officials about their discussions with congressional or presidential officials").

   **B.     Discussion**

STN argues that formal discovery is necessary to determine how much—if any—political pressure was exerted on the DOI, and what effect—if any—those events had on the acknowledgment process.  Federal Defendants assert that they have produced all relevant documents and oppose any further discovery, including the taking of depositions.  Intervenors-Respondents oppose discovery, but argue that if the Court should decide to grant discovery, the scope should be strictly limited to a request for documents as to whether improper political pressure was a consideration in the decision to submit the so-called "Supplemental Transmittal" or in the issuance of the Reconsidered Final Determination.

STN has submitted evidence of alleged political pressure, which include allegations that: (1) "members of Connecticut's congressional delegation met with [the DOI] Secretary Norton and members of her staff on no less than four occasions, each time demanding that the Department reverse its decision;" (2) "[Connecticut] Attorney General [Richard] Blumenthal, while representing the State in litigation before this Court, and while subject to a Court order to avoid ex parte contacts, had a private meeting with Secretary Norton to contest the recognition decision;" (3) "[t]he Connecticut congressional delegation fomented congressional hearings designed to consider reform of the tribal recognition process;" (4) TASK, a group formed by officials and citizens of the Town of Kent, "hired a high-powered Washington, DC lobbying firm—Barbour Griffith & Rogers LLC ("BGR")—to assist" it in undermining STN's recognition process; (5) "BGR—at the same time it was working to bring Governor Rell into its cause—directly contacted officials of the Department of the Interior;" (6) "Congresswoman [Nancy] Johnson contacted the BIA to request a meeting with agency officials including Aurene Martin in order to deliver to the BIA 8,000 survey postcards from Johnson's constituents, ostensibly opposing 'a new casino in Western Connecticut,'" and "[h]er press secretary informed the BIA that this effort . . . concerned the Schaghticoke's petition;" (7) "[t]hree members of Connecticut's congressional delegation directly contacted the IBIA . . . to argue ex parte against the merits of the Tribe's position on the appeal," and "shared their ex parte IBIA submission with TASK;" (8) "Congresswoman Johnson introduced legislation, the 'Schaghticoke Acknowledgment Repeal Act of 2005,' (H.R. 1104)—the first termination bill since federal repudiation of the termination policy nearly 50 years ago—that threatened, in effect, to strip the BIA of power to make a final, binding determination as to the Tribe's petition, and, in its place,

to usher in a new era of congressional termination acts with disastrous consequences for each and every American Indian Tribe." (See STN Mem. Supp. Mot. Disc. 4-6.) In its Reply memorandum, STN cites additional evidence that has come to light since the filing of their motion. (See STN Reply 2-4.)

STN alleges that there were certain contacts between the Connecticut congressional delegation and Connecticut state officials with persons in the DOI, BIA, IBIA and OFA. Although these contacts are not necessarily impermissible ones and do not necessarily prove that impermissible factors were taken into consideration in the acknowledgment process, they do raise some questions. It is clear that an administrative decision must be based "strictly on the merits and completely without regard to any considerations not made relevant by Congress in the applicable statutes." Volpe, 459 F.2d at 1246. Because "[c]ongressional interference in the administrative process is of heightened concern in a quasi-judicial proceeding," ATX, Inc. v. United States Dep't of Transp., 41 F.3d 1522, 1527 (D.C. Cir. 1994), this Court finds that very limited, focused discovery is appropriate. The contacts and alleged pressure will not be grounds for overturning the agency decision,[10] however, unless STN can show that the alleged pressure actually affected the agency decision on the merits, a finding that is difficult to make if the agency decision is based on extensive findings and reasoning and is made completely without regard to impermissible considerations. ATX, Inc., 41 F.3d at 1527-30; Volpe, 459 F.2d at 1246.

These allegations set forth with regard to former Secretary Gale Norton and Associate Deputy Secretary James Cason are sufficient to warrant further discovery into the question of

---

[10] The authority of congressional representatives to exert some pressure is without question and therefore, congressional actions not targeted directly at the decision makers—e.g., contemporaneous hearings—do not invalidate an agency decision. ATX, Inc., 41 F.3d at 1528.

whether there was bad faith or improper behavior on their parts. At the very least, STN has presented evidence sufficient to find that they may have "unique personal knowledge" with regard to activity and pressure concerning STN's petition. Cmty. Federal Sav. & Loan Ass'n, 96 F.R.D. at 621. Accordingly, in response to STN's discovery requests, this Court will permit the following limited discovery,[11] in lieu of any further response to the requests:

(1) STN may take the deposition of Gale Norton, Former Secretary of the Interior, however, the deposition will be limited to the communications she received from members of the Connecticut congressional delegation, Connecticut state officials or any person or entity representing the State of Connecticut, and the role, if any, these communications played—through former Secretary Norton—in the Reconsidered Final Determination on STN's petition for federal recognition, i.e., that she in turn communicated to anyone in the DOI or any of its agencies which were involved in making the final decision, but only to the extent not covered by the documents already produced; and

(2) STN may take the deposition of James E. Cason, Associate Deputy Secretary of the Interior, however, the deposition will be limited to any communication he received, directly or indirectly, from members of the Connecticut congressional delegation, Connecticut state officials or any person or entity representing the State of Connecticut, which pertained to the STN petition for federal recognition and what, if any, role such communications played in the Reconsidered Final Determination on the STN petition.

---

[11] This Court finds that the more extensive discovery requested is not appropriate due to the fact that STN was already permitted to conduct discovery, from May 20, 2005 through October 1, 2005, in the related land claim actions for the purpose of determining whether the Court's Scheduling Order prohibition on meeting or contacting officials of the Department of the Interior was violated. Moreover, the Federal Defendants have already produced a very large number of documents responsive to STN's proposed requests. (See Fed. Defs.' Mem. Opp. 19-28.)

Both depositions shall be completed on or before November 24, 2006.

STN will not be permitted to depose any other agency officials or any other person connected to the agency's decision. In this case, an extensive administrative record was created at the time of the agency decision, and STN has not made a sufficient showing of bad faith or improper behavior on the part of any person, aside from Gale Norton and James Cason, that would warrant the taking of his or her deposition. Cmty. Federal Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 96 F.R.D. 619, 621 (D.D.C. 1983) (citing United States v. Morgan, 313 U.S. 409, 422, 61 S. Ct. 999, 1004, 85 L. Ed. 1429 (1941)).[12] Aside from the two officials noted above, STN seeks to depose J. Steven Griles, Deputy Secretary of the Interior, David Bernhardt, Director of the DOI's Office of Congressional and Legislative Affairs and Counselor to the Secretary, Lee Fleming, Director of the OFA, and Loren Monroe of Barbour Griffith & Rogers LLC. STN has not alleged nor presented evidence of any bad faith or improper behavior on the part of any of these agency officials in connection with the decision to submit the Supplemental Transmittal or the issuance of the Reconsidered Final Determination. The evidence set forth here does not rise to the "extraordinary circumstances" necessary before requiring an agency official to submit to an oral deposition. Id. ("Not only must the integrity of the administrative process be protected, but public policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases.").

---

[12] Because the officials STN seeks to depose are senior officials within the DOI, a very strong showing of bad faith or improper behavior is required. See Cmty. Federal Sav. & Loan Ass'n, 96 F.R.D. at 621 ("the more senior the official to be deposed the stronger the showing to be demanded").

## IV.   MOTION FOR CLARIFICATION OF THE RECORD & FOR SUPPLEMENTAL DISCOVERY

With regard to an August 19, 2005 letter from the Court to Governor M. Jodi Rell, STN moves (1) for the August 19, 2005 letter to be made part of the record in this case and (2) for an order permitting STN to take supplemental discovery of the State of Connecticut with respect to the August 19, 2005 letter. The State of Connecticut opposes STN's motion.

STN represents that it recently discovered an August 19, 2005 letter from the Court to Governor M. Jodi Rell, and that neither STN nor its representatives had previously seen the letter. STN asserts that it is concerned about: (1) whether the August 19, 2005 letter is the only such non-filed correspondence between the Court and a party to this action, (2) whether the contents of the letter can fairly be read to suggest that the Court has unfavorably prejudged STN's due process claims—or other claims—in this action, and (3) how the State of Connecticut may have used the August 19, 2005 letter to its advantage in influencing the non-acknowledgment decision of the DOI, rendered shortly after the August 19, 2005 letter, in October 2005. (STN Mot. Clarification & Suppl. Disc. 2.)

The August 19, 2005 letter merely responds to a letter from Governor Rell. The letter has no substantive significance insofar as the merits of STN's claims are concerned, but serves only to provide some explanation that the extension of time referenced in the letter was designed to protect STN's due process rights. The letter does not reflect any view on the part of the Court, and the Court holds no views, with regard to the merits of STN's claims. The STN has failed to show that the letter was used in any way by any party to influence officials within the DOI or the BIA, stating only that it "does not know" how the State may have used it. (STN Mot.

Clarification & Suppl. Disc. 2.)  There is no evidence that Associate Deputy Secretary James E. Cason, the decision maker for the Reconsidered Final Determination, was improperly influenced by the August 19, 2005 letter, or any communication. (See Cason Decl., Doc. No. 86.) Moreover, the Declaration of Philip Dukes, Counsel for Policy for Governor Rell, states that the August 19, 2005 letter was, upon receipt, filed among the documents related to tribal recognition and "was not disseminated to any person or otherwise used for any purpose." (Dukes Decl. ¶¶ 5-6, Ex. 2 to State's Opp.)

The STN has failed to make the "strong showing" required for discovery with regard to this letter.  The letter has no substantive significance and has not been shown to be relevant in any way to the final agency decision, and therefore, there is no need to permit STN to take supplemental discovery of the State of Connecticut.  Because the State of Connecticut has no objection to the letter being made part of the record, this Court will grant STN's request to do so, however, STN's Motion for Supplemental Discovery with regard to the letter is denied.

**V.     CONCLUSION**

For the foregoing reasons and in accordance with the terms set forth herein, Intervenors-Respondents' Motion to Strike [Doc. No. 48] is **denied**, STN's Motion for Leave to Take Discovery [Doc. No. 58] is **granted in part** and **denied in part**, and STN's Motion for Clarification of the Record and for Supplemental Discovery [Doc. Nos. 87, 88] is **granted in part** and **denied in part**.

SO ORDERED.

Dated at New Haven, Connecticut, November 3, 2006

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court